```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

THE HOME INSURANCE COMPANY
IN LIQUIDATION,

                    Plaintiff,

    -against-                              05 CIV 9107 (KMW)(DCF)
                                              OPINION AND ORDER
THE TRAVELERS INDEMNITY COMPANY,
aka THE TRAVELERS INDEMNITY COMPANY
OF CONNECTICUT, aka TRAVELERS
INSURANCE COMPANY, aka TRAVELERS
PROPERTY & CASUALTY INSURANCE COMPANY,
aka ST. PAUL TRAVELERS,

                    Defendant.

------------------------------------x
```

KIMBA M. WOOD, U.S.D.J.:

Plaintiff The Home Insurance Company in Liquidation ("Home") brought this declaratory judgment action, seeking reimbursement for the settlement of an underlying action in New York state court. Defendant The Travelers Indemnity Company of Illinois now known as Travelers Property Casualty Company of America ("Travelers") now moves for summary judgment.[1]

Specifically, Travelers moves for an Order declaring "(1) Travelers did not breach its obligations under the policy issued to Tishman Construction; and (2) Travelers is not obligated to reimburse Home for the amount it paid to settle the [underlying] action; and (3) Home waived its right to seek indemnification

---

[1] Travelers was sued improperly herein as The Travelers Indemnity Company, aka The Travelers Indemnity Company of Connecticut, aka Travelers Insurance Company, aka Travelers Property & Casualty Insurance Company, aka St. Paul Travelers.

1

from Travelers; or, in the alternative, (4) Home's claim for indemnification is limited to $49,444.44." Travelers's Mem. 24. Home opposes the motion for summary judgment. For the reasons stated below, Travelers's motion is GRANTED.

I.  **Background**

Unless otherwise noted, the following facts are undisputed and are derived from the parties' Local Civil Rule 56.1 Statements. All inferences have been drawn in favor of Home.

A.  **The Action Before this Court**

This is a declaratory judgment action commenced by Home, seeking to recoup from Travelers the entire amount of its payment to the settlement of an underlying action. Travelers's 56.1 Stmt. ¶ 3. Home was an insurance company incorporated in New Hampshire and duly licensed and authorized to conduct the business of insurance in New York. On June 13, 2003, Home was liquidated pursuant to an Order of Liquidation issued by the New Hampshire Superior Court. Verified Compl. ¶¶ 1, 3. Travelers is an insurance company incorporated in and with its principal place of business in Connecticut. Travelers is authorized to conduct the business of insurance in New York. Verified Answer ¶ 2.

B.  **The Galloway Action**

On February 28, 1990, an accident occurred at a construction site located at 575 Lexington Avenue, New York, New York. Home's 56.1 Counterstmt. ¶ 1.  A laborer at the site, Mr. Galloway, slipped and fell on an unsecured, snow-covered block of wood

being used as a step outside of an access window. Id. As a result of this fall, Mr. Galloway was injured and required several surgical procedures. Id. ¶¶ 2, 3. Mr. Galloway filed suit against Tenth City Associates ("Tenth City"), owner of the building at 575 Lexington Avenue, and Bevin D. Koeppel ("Koeppel"), principal of the building's managing agent, Koeppel & Koeppel. Id. ¶ 4.

Mr. Galloway's lawsuit precipitated numerous claims, counterclaims, and cross-claims. Flour City Architectural Metals ("Flour City") was joined as a third-party defendant. Flour City was responsible for installing new windows and re-cladding the building at 575 Lexington Avenue. Home's 56.1 Counterstmt. ¶ 5; Travelers's Resp. to Home's 56.1 Counterstmt. ¶ 6. Heydt Contracting Corporation ("Heydt"); Inspeco, Inc. ("Inspeco"); and Tishman Construction Corporation ("Tishman") were joined as fourth-party defendants. Home's 56.1 Counterstmt. ¶¶ 6, 7, 10, 11, 12; Travelers's Resp. to Home's 56.1 Counterstmt. ¶¶ 7, 8, 11, 12, 13. Flour City hired Heydt to perform work at the construction site. Home's 56.1 Counterstmt. ¶ 6; Travelers's Resp. to Home's 56.1 Counterstmt. ¶ 7. Inspeco served as the Site Safety Manager and Permit Consultant. Home's 56.1 Counterstmt. ¶ 7; Travelers's Resp. to Home's 56.1 Counterstmt. ¶ 8. Tishman served as the Construction Manager for the project and as an agent for Tenth City. Home's 56.1 Counterstmt. ¶ 8; Travelers's Resp. to Home's 56.1 Counterstmt. ¶ 9.

Three parties to the Galloway action asserted cross-claims

against Tishman: Flour City, Heydt, and Inspeco. Home's 56.1 Counterstmt. ¶¶ 10, 11, 12; Travelers's Resp. to Home's 56.1 Counterstmt. ¶¶ 11, 12, 13. Flour City asserted cross-claims against Tishman for contribution, contractual indemnification, and common law indemnification. Home's 56.1 Counterstmt. ¶ 12. Heydt asserted cross-claims against Tishman for contribution and common law indemnification. Home's 56.1 Counterstmt. ¶ 10; Travelers's Resp. to Home's 56.1 Counterstmt. ¶ 11. Inspeco asserted cross-claims against Tishman for contribution and common law indemnification. Home's 56.1 Counterstmt. ¶ 11.

### C. Home's and Travelers's Involvement in the Galloway Action

It is undisputed that the direct defendants, third-party defendant, and fourth-party defendants were all required to have liability insurance policies for the construction site. Travelers's 56.1 Stmt. ¶ 35. Home insured Tenth City, Koeppel, and Tishman. Id. ¶¶ 6, 9, 59. Home provided coverage to Tishman through a commercial general liability policy. Home's Ex. B. Home's general liability policy provided coverage for contractual indemnification claims. Staley Aff. ¶ 3. Travelers provided coverage to Tishman through a Workers Compensation and Employer's Liability Policy, which covered Mr. Galloway's claim for compensation benefits. Travelers's 56.1 Stmt. ¶ 22. The Employer's Liability portion of this policy also provided coverage for contribution and common law indemnification claims. Staley Aff. ¶ 2. It is undisputed that Home and Travelers were

4

co-insurers of Tishman. See, e.g., Travelers's Mem. 5, 10, 11.

**D. The Galloway Settlement**

On October 7, 2002, the parties to the Galloway action settled the matter at a non-binding mediation. Travelers's 56.1 Stmt. ¶ 54. AIG, which provided coverage to Heydt and Inspeco through different insurance policies, agreed to pay to Mr. Galloway $70,000 on behalf of Heydt and $260,000 on behalf of Inspeco. Wausau, which provided coverage to Flour City through an insurance policy, agreed to pay $260,000 to Mr. Galloway. Home, which provided coverage to Tenth City, Koeppel, and Tishman through different insurance policies, agreed to pay $260,000 to Mr. Galloway.[2] Travelers's Ex. D. Travelers did not participate in the mediation and did not contribute any money to the settlement.

Travelers, however, did agree to reduce the workers compensation lien it held to $110,000. AIG, on behalf of Inspeco, agreed to pay $36,666.67 towards the workers compensation lien. Wausau, on behalf of Flour City, agreed to pay $36,666.66 towards the workers compensation lien. Home, on behalf of Tenth City, Koeppel, and Tishman, agreed to pay $36,666.67 towards the workers compensation lien.[3] Travelers's Ex. D.

---

[2]Home and Travelers dispute how much of the $260,000 contributed by Home was paid on behalf of each of Home's three insureds: Tenth City, Koeppel, and Tishman. See Travelers's Mem. 22-23; Home's Mem. 21-22; Travelers's Reply Mem. 8-10.

[3]Home and Travelers dispute how much of the $36,666.67 contributed by Home was paid on behalf of each of Home's three insureds: Tenth City, Koeppel, and Tishman. See Travelers's Mem. 22-

5

In total, Home therefore paid $296,666.67 to settle the Galloway action on behalf of its three insureds: Tenth City, Koeppel, and Tishman.

**II. Discussion**

    **A. Summary Judgment Standard**

Summary judgment is properly granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007). The substantive law governing a case will determine which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003).

The burden of demonstrating the absence of any genuine issue of material fact rests with the moving party. See Koch v. Town of Brattleboro, 287 F.3d 162, 165 (2d Cir. 2002)(citing Celotex Corp., 477 U.S. at 323). Once a motion for summary judgment is made and supported, "the non-moving party must set forth specific facts showing that there is a genuine issue for trial." Id. (internal quotation marks and citation omitted); Fed. R. Civ. P.

---

23; Home's Mem. 21-22; Travelers's Reply Mem. 8-10.

6

56(e)(2). All inferences must be drawn in favor of the non-moving party. See Liberty Lobby, 477 U.S. at 255.

**B.     Jurisdiction and Applicable Law**

This action was removed from the Supreme Court of the State of New York, County of New York, pursuant to 28 U.S.C. §§ 1441(a) and 1446. The action was removable because it is a civil action over which the Court has original jurisdiction under 28 U.S.C. § 1332, in that the parties are from different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

When removal to federal court is grounded in diversity, the federal court applies state substantive law in accordance with the choice-of-law provisions of the forum state. See Erie R.R. v. Tompkins, 304 U.S. 64 (1938); Ocean Ships, Inc. v. Stiles, 315 F.3d 111, 116 n.4 (2d Cir. 2002). Because the construction site was located in New York and no party to this motion has raised a choice-of-law issue, the Court finds that New York law governs. See Liberty Mutual Fire Ins. Co. v. E.E. Cruz & Co., Inc., 475 F. Supp. 2d 400, 407 (S.D.N.Y. 2007).

**C.     Travelers Did Not Breach Its Insurance Obligations to Tishman**

**1.     An Insurer's Duty to Settle Claims**

Home seeks a declaratory judgment that Travelers breached its insurance obligations to provide coverage to Tishman. Home's Mem. 17. Home argues that as a result of Travelers's failure to

7

participate in the Galloway settlement, Home was forced to provide Tishman's full payment to the settlement. Home seeks reimbursement for this payment.

Travelers moves for an Order declaring "(1) Travelers did not breach its obligations under the policy issued to Tishman []; and (2) Travelers is not obligated to reimburse Home for the amount it paid to settle the Galloway action." Travelers's Mem. 24. For the reasons stated below, these aspects of Travelers's motion for summary judgment are granted.

Under New York law, an insurer has a duty of good faith in defending and settling claims against its insured. See New England Ins. Co. v. Healthcare Underwriters Mutual Ins. Co., 295 F.3d 232, 240-42 (2d Cir. 2002); Pavia v. State Farm Mutual Automobile Ins. Co., 82 N.Y.2d 445, 452 (N.Y. 1993). Pavia sets forth the factors to consider in evaluating good faith: regarding settlement negotiations, "courts must assess the plaintiff's likelihood of success on the liability issue in the underlying action, the potential magnitude of damages and the financial burden each party may be exposed to as a result of a refusal to settle." 82 N.Y.2d at 454-55.

Travelers maintains that it "was acting reasonably when it declined to participate in settlement discussions on the ground[] any third party claim or cross-claims against Tishman were dismissible by virtue of the Anti-Subrogation Rule." Travelers's Mem. 16. Travelers argues that its insured, Tishman, would be

8

exposed to no financial burden as a result of Travelers's refusal to settle.

It is undisputed that Flour City, Heydt, and Inspeco, the only parties to assert cross-claims against Tishman, were contractually obligated to name Tishman as an additional insured on their respective insurance policies. Home's Ex. A ¶ 12. It is disputed, however, whether Flour City, Heydt, and Inspeco fulfilled this contractual obligation. Home's Mem. 4-8. For the reasons set forth below, this disputed fact is not material. Travelers reasonably believed that Tishman was insulated from financial exposure. Travelers reasonably refused to participate in the Galloway settlement.

### 2. The Anti-Subrogation Rule

Assuming arguendo that Flour City, Heydt, and Inspeco named Tishman as an additional insured on their respective insurance policies, then the anti-subrogation rule would bar their cross-claims against Tishman.[4] "Under New York law, an insurer that has

---

[4] This legal principle is undisputed. In fact, Home recognizes "that '[t]he Anti-Subrogation rule stands for the proposition that where a party is covered as an additional insured under a general liability policy written for another party, neither party may maintain a claim against the other to the extent that they are covered under the same policy.'" Home's Mem. 8 (citing Staley Aff. ¶ 12). Home instead attacks the applicability of the anti-subrogation rule. First, Home argues that Travelers failed to establish that Flour City, Heydt, and Inspeco procured the contractually required insurance coverage. As discussed infra, if Flour City, Heydt, and Inspeco failed to procure the contractually required insurance coverage, then Tishman would have been protected from financial exposure by their breaches of contract. Second, Home argues that the policy rationales underlying the anti-subrogation rule do not preclude a "declaratory judgment action by one carrier against another" where "there are two separate insurance carriers covering different risks." Home's Mem. 9. Home misconstrues

9

paid on its insured's claim has the common law right to subrogation against the person who is responsible for the events underlying the claim." Liberty Mutual Fire Ins. Co., 475 F. Supp. 2d at 407 (citing North Star Reinsurance Corp. v. Continental Ins. Co., 82 N.Y.2d 281, 294 (N.Y. 1993)). An exception to the right of subrogation arises "when two parties are covered by the same insurer for the same risk." Nelson v. Metro-North Commuter Railroad Co., 1999 U.S. Dist. LEXIS 1773, *11 (S.D.N.Y. Feb. 19, 1999)(citation omitted). In such circumstances, the anti-subrogation rule precludes one party from "recover[ing] damages from the other on a covered claim arising from that risk." Id. Assuming arguendo that Flour City, Heydt, and Inspeco procured insurance policies that named Tishman as an additional insured, the anti-subrogation rule would have barred their cross-claims against Tishman. See, e.g., Kurtin v. National Railroad Passenger Corp., 1996 U.S. Dist. LEXIS 5287, *6 (S.D.N.Y. Apr. 22, 1996).

### 3. Breach of Contract for Failure to Procure Insurance

It is undisputed that Flour City, Heydt, and Inspeco were contractually obligated to name Tishman as an additional insured on their respective insurance policies. Home's Ex. A ¶ 12. Assuming arguendo that they failed to do so, then Flour City,

---

the applicability of the anti-subrogation rule. The rule does not preclude Home's current action against Travelers; rather it precluded the cross-claims of Flour City, Heydt, and Inspeco against Tishman in the Galloway action.

Heydt, and Inspeco would be "liable for damages resulting from the breach [of contract], including the amount of any judgment up to policy limits and costs of defending any suit that would have been defended by the insurer." Nelson, 1999 U.S. Dist. LEXIS 1773 at *10(citations omitted); see also Kennelty v. Darlind Construction, Inc., 688 N.Y.S.2d 584, 586-87 (2d Dep't 1999); McGill v. Polytechnic Univ., 651 N.Y.S.2d 992, 994 (2d Dep't 1997).

Claiming that Flour City, Heydt, and Inspeco failed to name Tishman as an additional insured on their respective insurance policies, Tishman pursued breach of contract claims against all three parties during the Galloway action. It is undisputed that Tishman filed a cross-motion for summary judgment in the Galloway action seeking dismissal of all of Flour City's cross-claims against Tishman based on Flour City's failure to procure insurance naming Tishman as an additional insured. Travelers's 56.1 Stmt. ¶ 33. The cross-motion was denied because the New York court found a genuine issue of material fact as to whether Flour City had named Tishman as an additional insured. Home's Resp. to Travelers's 56.1 Stmt. ¶ 34. Tishman also filed cross-motions for summary judgment in the Galloway action seeking dismissal of all of Heydt's and Inspeco's cross-claims against Tishman for their failure to procure insurance naming Tishman as an additional insured. Travelers's Ex. Q 12-13. These cross-motions were also denied. Id. If Flour City, Heydt, and Inspeco failed to procure

the contractually required insurance coverage, then Tishman would have been insulated from financial exposure by their breaches of contract.

### 4. Travelers's Reliance on Tishman's Insulation from Financial Exposure

Travelers reasonably relied on Tishman's insulation from financial exposure in refusing to participate in the Galloway settlement.

During the course of the Galloway action, Travelers retained separate counsel, Mr. Staley, to monitor the defense provided to Tishman by Home's retained counsel, the law firm of Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski. Travelers's 56.1 Stmt. ¶ 26. Mr. Staley, after receiving all discovery materials, informed Travelers and Home that Tishman was shielded from financial exposure by the anti-subrogation rule. Id. ¶ 29; Home's Resp. to Travelers's 56.1 Stmt. ¶ 29.

Travelers maintained this position through the October 7, 2002 mediation. In fact, Mr. Staley urged Home's retained counsel for Tishman to move for summary judgment seeking to dismiss the cross-claims against Tishman based on the anti-subrogation rule. Travelers's 56.1 Stmt. ¶ 38. On August 22, 2002, Home filed a motion for summary judgment seeking dismissal of Flour City's and Heydt's cross-claims on this ground. Travelers's Exs. T, U. In early September 2002, Home notified Travelers of the upcoming non-binding mediation. Travelers's 56.1 Stmt. ¶ 42. Home

requested that Travelers participate and contribute towards settlement of the Galloway action. Id. ¶ 43. On September 20, 2002, however, Mr. Staley advised Home's retained counsel that Travelers would not participate in settlement discussions because Tishman was insulated from financial exposure. Id. ¶ 44. Travelers consistently maintained the position that Tishman was insulated from financial exposure throughout the Galloway action.[5]

Based on this position, Travelers reasonably refused to participate in the Galloway settlement. The Court holds that Travelers did not breach its insurance obligations to Tishman and is therefore not obligated to reimburse Home for any of the amount it paid to settle the Galloway action.

---

[5] Home argues that Travelers's position "was more feigned than real" and that Travelers "us[ed] the anti-subrogation doctrine as their pretext or cover." Home's Mem. 15, 16. Home's argument is without merit. First, Home points out that Travelers relied on outside counsel to develop this position. Id. at 15. Travelers's reliance on outside counsel reinforces, rather than undermines, their position with respect to the anti-subrogation rule. See, e.g., Greenridge v. Allstate Ins. Co., 312 F. Supp. 2d 430, 440 (S.D.N.Y. 2004)(an insurance company's interpretation of policies was deemed "far from unreasonable, as demonstrated by the fact that [the insurance company] obtained opinion letters from two separate sets of outside counsel that confirmed its reading of the policies"). Second, Home selectively quotes from a Claims note and two emails, Home's Mem. 15-16, but this evidence may actually undercut Home's argument. The Claims note emphasizes that Travelers is "actually pretty lucky not to have a significant [Employer's Liability] exposure." Home's Ex. J. One email conveys Mr. Staley's impression that Travelers does not have "a significant [Employer's Liability] exposure . . . the way the pleadings are structured." Home's Ex. I. The final email can be interpreted that from Travelers's perspective, this case is "pretty close" to the "slam-dunk" that Mr. Staley presents. Home's Ex. L. The Court simply cannot conclude that there is a genuine issue of material fact regarding Travelers's consistent position on Tishman's insulation from financial exposure.

## III. Conclusion

The Court declares that Travelers did not breach its obligations under the insurance policy issued to Tishman. The Court further declares that Travelers is not obligated to reimburse Home for any of the amount Home paid to settle the Galloway action. The Court therefore need not address (1) Travelers's additional argument that Home waived the right to seek indemnification from Travelers, or (2) Travelers's alternative argument that Home's claim for indemnification should be limited to $49,444.44.

The Court grants Travelers's motion for summary judgment. Docket Entry 52. The Clerk of Court is directed to close this case; any pending motions are moot.

SO ORDERED.

Dated:  New York, New York
        January 31, 2008

_____
Kimba M. Wood
United States District Judge